# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2025-1821

_____

KEITH GEORGE BARTON, JR.,

    Appellant,

    v.

JOCELYN RACHELLE BARTON,

    Appellee.

_____

On appeal from the Circuit Court for Santa Rosa County.
Darlene Fallon Dickey, Judge.

August 12, 2026

WINOKUR, J.

Appellant Keith George Barton, Jr. (the Father) challenges two nonfinal orders regarding custody of a minor child that he shared with Appellee Jocelyn Rachelle Barton (the Mother). *See* Fla. R. App. P. 9.130(a)(3)(C)(iii). We vacate both orders for the following reasons: (1) the trial court erroneously excluded evidence of domestic violence; and (2) the trial court failed to specifically acknowledge in writing that evidence of domestic violence was considered when evaluating the best interests of the child.

## I

At the time of the evidentiary hearing in this case, the minor child was eleven years old and living with the Mother in Florida. The Father was living in Texas. Although the parties were divorced in North Carolina, and Alabama at one point exercised jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), Florida now exercises UCCJEA jurisdiction.

The Father filed an emergency petition in the First Judicial Circuit entitled "Ex Parte Emergency Custody Motion" ("the first motion") on October 1, 2024. On April 9, 2025, the Father filed another ex parte emergency custody motion ("the second motion").

In the first motion, the Father alleged the following substantial and material change in circumstances impacting the well-being of the minor child: "Now that the Mother is again cohabitating with [her boyfriend], their home is not a safe environment for the minor child." According to the Father, the Mother's boyfriend previously committed the following acts of violence against or in the presence of the minor child:

- "physical violence on the minor child resulting in injury, name calling, hair pulling, threats, mental manipulation, and other inappropriate acts..."

- "verbal and emotion[al] violence between [Mother] and [Mother's boyfriend]."

- "[Mother's boyfriend] garnish[ed] [sic] a weapon to use against the Father in front of the minor child."

The Father included a letter purportedly written by the minor child, which states:

> How i got my bruise is so [Mother's boyfriend] put me in my room and i hit my back on my stairs of my bed. And then one day [Mother's boyfriend] thought my dad was at the door and he grabbed a gun and threat[ened] to shoot him but it turned out to be my mom. And then one day

2

[Mother's boyfriend] and my mom broke up and he said GET YOU AND YOUR kid out of the house!!! And my mom said I'm tired of you being mean to [the minor child]. The reason why i'm kinda afraid to tell this is because i'm scared if ya'll tell my mom what i said and i'm scared if she will get mad at me.

Furthermore, the Father alleged that, during a custody hearing in an Alabama court in early 2024, the Mother "mitigated" concerns about her boyfriend's violence by claiming that she no longer resided with him. According to the Father, the Mother subsequently experienced financial difficulties and decided to cohabitate once again with her boyfriend, thereby exposing the minor child to further violence.

In the second motion, the Father alleged that the violence in the Mother's home was escalating, as domestic violence incidents occurred throughout early 2025. The Father alleged that the escalating violence negatively impacted the minor child's mental health and caused the Mother to hospitalize the child.

At the evidentiary hearing, the Father appeared pro se, but the Mother was represented by counsel. During that portion of the hearing addressing the second motion, the Father called the Mother to the stand. The Father attempted to ask the Mother about an alleged incident involving the Mother's boyfriend and a gun. The Mother's counsel objected as outside the scope of the motion, and the trial court sustained the objection. Later, the Father asked the Mother whether she left her boyfriend because he was mean to the minor child. The Mother's counsel objected, and the trial court sustained that objection as well. On the same day it heard the motions, the trial court rendered two nearly identical orders denying relief on both.

On appeal, the Father argues that the trial court violated section 61.13(3)(m), Florida Statutes, when it excluded evidence of domestic violence in the Mother's home. The Father specifically cites the sustained objections noted above. Additionally, the Father argues that the trial court issued orders "without factual analysis or findings addressing the verified abuse and neglect allegations[,]" also in violation of section 61.13(3)(m). Without

3

addressing the veracity of the Father's allegations of domestic violence, we agree that the trial court committed reversible error by failing to follow section 61.13(3)(m). Therefore, we vacate both orders under review.

## II

Section 61.13(3)(m) governs the modification of a parenting plan based on evidence of violence, abuse, abandonment, or neglect. Section 61.13 read in part as follows:

> A determination of parental responsibility, a parenting plan, or a time-sharing schedule may not be modified without a showing of a substantial and material change in circumstances and a determination that the modification is in the best interests of the child. . . . Determination of the best interests of the child must be made by evaluating all of the factors affecting the welfare and interests of the particular minor child and the circumstances of that family, including, but not limited to:
>
> * * *
>
> (m) Evidence of domestic violence, sexual violence, child abuse, child abandonment, or child neglect or evidence that a parent has or has had reasonable cause to believe that he or she or his or her minor child or children are in imminent danger of becoming victims of an act of domestic violence, regardless of whether a prior or pending action relating to those issues has been brought. If the court accepts evidence of prior or pending actions regarding domestic violence, sexual violence, child abuse, child abandonment, or child neglect, the court must specifically acknowledge in writing that such evidence was considered when evaluating the best interests of the child.

§ 61.13(3), Fla. Stat. Under the express language of the statute, consideration of evidence of domestic violence is mandatory in custody modification cases. *See Wallace v. Wallace*, 418 So. 3d 148, 152 (Fla. 4th DCA 2025) ("[Section 61.13(3)(m)] *requires* a court to consider 'evidence of domestic violence' in determining whether

4

parental responsibility, a parenting plan, or a timesharing schedule is in the best interest of the child." (citing § 61.13(3)(m), Fla. Stat.) (emphasis supplied)); *see also Bell v. Battaglia*, 332 So. 3d 1094, 1100 (Fla. 2d DCA 2022) ("Indeed, '[e]vidence of domestic violence' is an enumerated factor *to be considered* in determining whether a parenting plan is in the best interests of a child." (citing § 61.13(3)(m), Fla. Stat.) (emphasis supplied)).

In *P.D.V-G. v. B.A.V-G.*, the Second District addressed a similar situation. The former husband petitioned for modification of the dissolution judgment "based on incidents involving the former wife and her boyfriend, the former wife's harassment of the former husband, and the former wife's interference with the former husband's visitation and shared parental responsibility[,]" which a magistrate recommended granting. 320 So. 3d 885, 886–87 (Fla. 2d DCA 2021). Regarding domestic violence specifically, the magistrate "found that '[t]here is a significant history of domestic violence and police activity' between the former wife and her boyfriend and that the former wife significantly minimalized her history of domestic violence with her boyfriend." *Id.* at 887. But the trial court disagreed, finding that the magistrate erred by finding that the temporary removal of the child qualified as a substantial and material change in circumstances because "the temporary emergency had been resolved and could not form the basis of the later permanent change in circumstances." *Id.* at 887–88 (quoting trial court's order).

The Second District reversed, noting that "neither the statute nor the case law requires the [substantial and material] change [in circumstances] to be permanent[,]" and that the "trial court erred in focusing on the fact that the removal of the children from the [mother's] care had been temporary rather than on the overall nature of the change in circumstances as alleged by [the Father] and found by the magistrate." *P.D.V-G.*, 320 So. 3d at 888 n.1 (citations omitted). As to domestic violence specifically, the Second District found that "[m]uch of the change in circumstances alleged by the former husband and found by the magistrate relates to the domestic violence between the former wife and her boyfriend." *P.D.V-G.*, 320 So. 3d at 888. Moreover, evidence of domestic violence, in and of itself, can constitute a substantial and material change in circumstances. *Id.* at 888–89 ("Indeed, the law holds that

5

'parents engaging in domestic violence in front of their children constitutes an unanticipated, material, and substantial change in circumstances supporting modification of a timesharing arrangement.'" (quoting *Myers v. Myers*, 295 So. 3d 1207, 1211 (Fla. 2d DCA 2020))).

Similar to the facts of *P.D.V-G.*, the Father in this case alleged that the minor child experienced domestic violence in the Mother's home at the hands of the Mother's boyfriend. Also similar to *P.D.V-G.*, the Father in this case identified the Mother's decision to live with an abusive boyfriend as a substantial and material change in circumstances under section 61.13(3), Florida Statutes. As in *P.D.V-G.*, in this case the Mother and boyfriend were still living together as of the date of the modification hearing.

Unlike the facts of *P.D.V-G.*, however, the Father in this case alleged that the Mother avoided having to address her boyfriend's violent behavior by claiming in a previous custody proceeding that she no longer resided with him. In other words, the Father in this case specifically alleged that the acts of domestic violence had not been considered in any prior custody proceeding between the parties. *See Cooper v. Gress*, 854 So. 2d 262, 265 (Fla. 1st DCA 2003) ("[T]he substantial change must be one that was not reasonably contemplated at the time of the original judgment." (citing *Pimm v. Pimm*, 601 So. 2d 534, 536 (Fla. 1992))).

Nevertheless, the trial court repeatedly blocked the Father's attempts to question the Mother about her boyfriend's behavior, agreeing with the Mother that the topic was beyond the scope of the motion. To the extent the questions were beyond the scope because the court heard the second motion before the first one, the exclusion of evidence based on any such a bifurcation runs afoul of the statutory requirement that courts must evaluate "all of the factors affecting the welfare and interests of the particular minor child and the circumstances of that family," including evidence of domestic violence. § 61.13(3), Fla. Stat; *see also Wallace*, 418 So. 3d at 152; *Bell*, 332 So. 3d at 1100; *Waybright v. Johnson-Smith*, 115 So. 3d 445, 447 (Fla. 1st DCA 2013); *see, e.g., P.D.V-G.*, 320 So. 3d at 885 (approving the magistrate's finding that "the former wife significantly minimalized her history of domestic violence with her boyfriend").

6

Furthermore, the Father alleged new acts of domestic violence in the second motion, and he alleged that "[t]he violence in the Mother's home is yet again escalating[,]" presumably an escalation from the domestic violence mentioned in the first motion. Despite this, the trial court sustained the Mother's objections to the Father's questions about the Mother's boyfriend. This was error. *See Doran v. Doran*, 49 So. 3d 1290 (Fla. 1st DCA 2010) (finding that the court erred when it "did not permit Ms. Doran to present this evidence [of child abuse by the Father,] which clearly would be relevant to a determination whether modification of the time-sharing schedule was in the best interests of the minor children.").

III

Paragraph (3)(m) of section 61.13 requires trial courts to "specifically acknowledge in writing" evidence of domestic violence admitted in a child custody determination. The Legislature added this requirement in 2009. *See* Ch. 2009-180, § 3, Laws of Fla. By its express terms, the statutory requirement applies to any action brought to establish or modify a parenting plan, regardless of whether the trial court grants or denies relief. *See* § 61.13(3)(m), Fla. Stat.; *see also J.N.S. v. A.M.A.*, 194 So. 3d 559, 561 (Fla. 5th DCA 2016) (describing section 61.13(3)(m) as "requiring the court to acknowledge in writing that evidence of domestic abuse was considered when determining the best interests of the children").

In 2023, the Legislature added another requirement: (absent agreement) when creating or modifying a time-sharing plan, the trial court must "make specific written findings of fact" that address all the best interest factors outlined in subsection (3) of section 61.13, Florida Statutes. *See* § 61.13(2)(c)1., Fla. Stat. ("Except when a time-sharing schedule is agreed to by the parties and approved by the court, the court must evaluate all of the factors set forth in subsection (3) and make specific written findings of fact when creating or modifying a time-sharing schedule."); *see also* Ch. 2023-301, § 1, Laws of Fla.

Unlike the requirement enacted in 2009, the requirement passed in 2023 does not apply when a trial court denies a petition to modify a parenting plan. *See Squires v. Squires*, 415 So. 3d 263,

7

265 (Fla. 5th DCA 2025) ("[T]he plain text of [sections 61.13(2)(c)1. and 61.130(1)(a)] does not include a written findings requirement when a court merely denies a petition to modify child support or timesharing."); *see also Wolverton v. Wolverton*, 425 So. 3d 85 (Fla. 6th DCA 2025) (discussing the difference between the 2009 requirement outlined in paragraph (3)(m) and the 2023 requirement outlined in paragraph (2)(c)). In contrast, if there is evidence of domestic violence, then the 2009 requirement applies regardless of whether there is a change to the parenting plan. *See J.N.S.*, 194 So. 3d at 561; *Smith v. Daniel*, 246 So. 3d 1279 (Fla. 1st DCA 2018).

In this case, even without the excluded evidence that the Father could have elicited from the Mother, the Father attached a letter to the first motion. That letter is purportedly written by the minor child. It does not appear that the Mother objected to this evidence. *See generally J.N.S.*, 194 So. 3d at 560 n.1 (noting that an apparently hearsay report was entered into evidence but presuming that it was admitted "either without objection or under a recognized exception").

It is clear, however, that the trial court did not specifically address that evidence in its order denying relief. Instead of specifically acknowledging the evidence of domestic violence in writing as required by paragraph (3)(m) of section 61.13, the court simply "conclude[d] that there is not competent evidence indicating that these incidents have occurred in the manner in which they were described in the Motion."

This was error, even if the trial court did not believe the Father's version of events. *See J.N.S.*, 194 So. 3d at 561 ("[T]he final judgment, in quoting from the 2006 police report and acknowledging the other arrests and testimony, shows that the trial court at least considered these incidents but found that it was 'unable to conclude that any domestic violence actually took place.'"); *cf. Wolverton*, 425 So. 3d at 89 (applying the 2023 requirement but holding: "[t]he trial court erred by not making written findings on the section 61.13(3) factors that supported its determination of shared parental responsibility, including the abuse allegations that Former Wife raised at trial.").

8

## IV

In conclusion, we hold that the trial court committed reversible error when it (1) excluded evidence of domestic violence and (2) rendered two orders that failed to "specifically acknowledge in writing" that it considered the evidence of domestic violence that was before the court. *See* § 61.13(3)(m), Fla. Stat. Therefore, we vacate both orders under review.

RAY and TREADWELL, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Keith George Barton, Jr., pro se, Appellant.

Brenda E. Carpenter and Christopher W. Wadsworth of Wadsworth, Margrey, & Dixon, LLP, Miami, for Appellee.